UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATLAS RESOURCES, LLC,

        Plaintiff,                                   Hon. Janet T. Neff

v.                                                     Case No. 1:12-cv-00041

MCJUNKIN RED MAN CORPORATION, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant McJunkin Red Man Corporation's Motion for Summary Judgment for Lack of Privity and Standing (Dkt. 187), joined by Defendant U.S. Tubular Products, Inc. (Dkt. 197). The motion was referred to the undersigned by the Honorable Janet T. Neff for report and recommendation under 28 U.S.C. § 636(b)(1)(B), and the parties were heard on May 21, 2013. Additional briefing was ordered (Dkt. Nos. 214, 216, 217 and 218).

I.     Background

Plaintiff Atlas Resources, LLC ("Atlas Resources" or "Plaintiff") initiated this action in state court in December 2011, against Defendants McJunkin Red Man Corp. ("MRC") and U.S. Tubular Products, Inc., specifically its Ohio division d/b/a Benmit ("Benmit"). Defendant MRC removed the case to this Court on January 13, 2012 on diversity grounds. Plaintiff is a Pennsylvania limited liability company. Defendants MRC and Benmit are both Delaware corporations.

Plaintiff purchased approximately 42,000 feet of casing from Defendant MRC for use in the Lucas gas wells located in Kalkaska County, Michigan. Defendant Benmit manufactured the casing

(or at least re-threaded the casing). Plaintiff installed the casing within a well, but subsequent testing revealed that the casing was defective. Allegedly, the threaded casing ends were improperly sized and/or fitted, preventing an adequate seal. Plaintiff alleges that the casing is defective to such an extent that the well cannot be completed and is, therefore, considered a complete loss. Plaintiff's complaint is straightforward and based on the contract pursuant to which the allegedly defective casing was purchased. Plaintiff claims that the casing was defective and that it is entitled to various damages under the UCC. Specifically, Plaintiff asserts the following claims:

> I. Breach of Contract against Defendant MRC
>
> II. Breach of Contract–Third Party Beneficiary–MRC & Benmit
>
> III. Breach of Implied Warranty of Merchantability–Benmit
>
> IV. Breach of Implied Warranty of Fitness–Benmit
>
> V. Breach of Express Warranties–Benmit

In February 2012, MRC filed its Answer and Cross-Claim against Benmit, seeking a declaratory judgment that Benmit should indemnify MRC (Dkt. 11). MRC asserts that Benmit entered into a purchase order that includes an indemnity, defense, and hold harmless clause. On May 1, 2012, Benmit filed a Notice of Non-Party Fault, naming two other manufacturers (Dkt. 32). Plaintiff moved to strike the Notice of Non-Party Fault, arguing, in pertinent part, that the comparative fault provisions of the Michigan Tort Reform Act upon which Benmit relied were inapplicable because Plaintiff's claims are governed by the economic loss doctrine and provisions of the Uniform Commercial Code (UCC), not tort theories (Dkt. 49, Mot. ¶ 5). The Notice of Non-Party Fault has since been stricken (Dkt. 120).

While Plaintiff's claims are fairly straightforward, Plaintiff's corporate morphing is much more complicated and the subject of Defendants' respective motions and concurrences. The original contract at issue ("purchase contract") is dated May 19, 2004, and was between DTE Gas & Oil Company ("DTE"), called "purchaser" in the contract, and McJunkin Appalachian, called "seller" in the contract.

In June 2007, a subsidiary of Atlas Energy, Inc. acquired all of the capital stock of DTE which was subsequently merged with and into Atlas Gas & Oil Company, LLC ("AGO"). AGO was the surviving entity of the merger. *See* Certificate of Merger, Exh. B to MRC's Brief (Dkt. 187, Page ID #2058).

On June 27, 2007, DTE filed a Certificate of Merger with the Michigan Department Of Labor and Economic Growth, stating that DTE had merged with AGO, and that AGO was the surviving corporate entity. On December 1, 2009, AGO and MRC entered into Renewal Order #5 ("renewal order") which renewed the purchase contract for a term of February 1, 2010 to January 31, 2011. (Dkt. 1, Plaintiff's Complaint, Exh. A, Page ID #27) The well casing purchased pursuant to the renewal order was installed in the Lucas Well (Lucas 1-13HD1). Plaintiff alleges that the Lucas Well was drilled from September 2, 2010 through December 3, 2010, with the well casing being installed from late November through early December 2010. AGO purchased the allegedly defective casing pursuant to Renewal Order #5, was the original permitee of the Lucas Well and was the entity charged with drilling and completing the same. *See* Lucas Well Permit, Exh. 1 to Plaintiff's Response (Dkt. 190, Page ID #2154). AGO was also part of a very large transaction involving what was then known at Atlas Energy, Inc. the parent company of both AGO and Atlas Resources.

On April 13, 2011, AGO changed its name to Chevron Michigan, LLC ("Chevron"). Chevron, formerly AGO, transferred the permit for the Lucas Well to Atlas Resources. The permit states that Atlas Resources is the owner or authorized representative of the owner of the well under the permit and assumes full responsibility for the drilling, operation, and abandonment of same.

Plaintiff does not dispute that an Assignment of Oil and Gas Lease was first recorded on February 28, 2012 (effective July 1, 2011) between Magnum Land Services, LLC and Chevron. However, Plaintiff claims that it (Atlas Resources) held the leasehold interest for the Lucas Well prior to this time. *See* Affidavit of Joel S. Heiser, Exh. 3 to Plaintiff's Response (Dkt. 190, Page ID #2158). According to Plaintiff, it (Atlas Resources) obtained an interest in the lease for property upon which the Lucas Well was drilled upon the closing date of the Transaction Agreement, February 17, 2011. *Id.*

Plaintiff further asserts that Joel S. Heiser, Associate General Counsel and Secretary for Atlas Resources, was in contact with J. Hammond of Chevron in order to obtain a recorded assignment of the lease for the Lucas Well to memorialize Atlas Resources' ownership and interest in the same. According to the affidavit of Joel S. Heiser, Atlas Resources had obtained the rights to the lease, and the ministerial act of preparing and recording the actual assignment was caused by certain delays as set forth in the Heiser affidavit. Plaintiff's position is that although it is undisputed that the Assignment of Oil and Gas Lease from Chevron to Atlas Resources for 80 acres immediately surrounding the Lucas Well was dated December 19, 2012, Atlas Resources had an interest in the lease prior to the written assignment. *See* Affidavit of Joel S. Heiser, and the Transaction Agreement, Exh. 4 to Plaintiff's Response (Dkt. 191, Page ID #2166). Thus, Atlas

Resources claims that it had an interest in the mineral rights to the Lucas Well prior to December 19, 2012.

The December 19, 2012 assignment states: (Assignor [Chevron] covenants with Assignee [Plaintiff]… that Assignor is the lawful owner of said lease(s) and rights and interest thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same…." (Dkt. 187, Page ID #2089 at ¶ 4). A simple schematic of Plaintiff's argument why it has been assigned the contract and is the proper party in interest is as follows:

$$
\begin{array}{c}
\text{DTE Gas \& OIL Company (DTE)} \\
\downarrow \text{ (via merger)} \\
\text{Atlas Gas \& Oil Company, LLC (AGO)} \\
\downarrow \text{ (via Transaction Agreement)} \\
\text{Atlas Pipeline Holdings, L.P. (AHD)} \\
\downarrow \text{ (via intent \& action)} \\
\text{Atlas Resources, LLC}
\end{array}
$$

Plaintiff's claims are brought pursuant to and arising under the Uniform Commercial Code ("UCC").[1] Thus, whether Plaintiff was properly assigned the contract, is the real party in interest, or has standing must be analyzed in light of the UCC. Plaintiff claims it has satisfied all three requirements through the aforementioned convoluted series of corporate restructurings and mergers. Specifically, Plaintiff claims that it was assigned the DTE Gas & Oil Company contractual rights under the May 19, 2004 purchase contract between DTE and McJunkin Appalachian.

---

[1]In its answer, MRC does not deny that the relationship of the parties is governed by the UCC, nor does Benmit.

Defendant MRC argues that Plaintiff Atlas Resources has no rights under the contract which is the subject of Plaintiff's Complaint because the writing allegedly establishing such was not created until after the Complaint was filed. Defendant Benmit concurs and also argues that Plaintiff lacks Article III standing under the U.S. Constitution, an argument in which Defendant MRC has concurred.

Defendants claim that because Atlas Resources is neither a party to, nor a third-party beneficiary of, the contract upon which Count I of Atlas Resources' Complaint is based, summary judgment dismissing the count is proper. Defendants also seek dismissal of Plaintiff's entire Complaint on the ground that Atlas Resources had not obtained, at the time this action was initiated, a property interest in the mineral rights for the land upon which the Lucas Well is located, and thus Atlas Resources "possessed no legally protected interest" in the Lucas Well. In other words, Defendants assert that Plaintiff lacks Article III standing to assert the present action.

The crux of the present factual dispute concerns when Atlas Resources obtained an interest in both the contract and the lease. Plaintiff claims it obtained its interest in the contract and lease on February 17, 2011, the closing date of the Transaction Agreement. Defendants counter that Plaintiff did not obtain its interest in such until the formal written assignment of such which occurred on December 19, 2012, approximately one year *after* Plaintiff initiated the present action.

II.  Discussion

Defendants move for summary judgment alleging that there is no privity of contract between Atlas Resources and Defendants. Defendants further argue that Atlas Resources lacks standing to bring its Complaint (Dkt. Nos. 187 and 188).

A. Standard of Review

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing

that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence

is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      B.      <u>Statute of Frauds</u>

Defendants claim a lack of contractual privity with Plaintiff because they argue that any assignment of the contract to Plaintiff did not comply with the Michigan Statute of Frauds, MCL 566.132, and that Plaintiff's theory of assignment by intent and action is unavailing. However, because this case arises under and is brought pursuant to the UCC, the general Michigan Statute of Frauds is not applicable.

The UCC statute of frauds applicable to this action, MCL 440.2201, provides that a contract for the sale of goods for a price of $1000 or more is not enforceable unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. It is beyond dispute that these minimal requirements have been met here.

Further, Plaintiff claims it was assigned the contract at issue as well as the leasehold interest connected to that contract. What is key to the validity of an assignment is the intent to assign. *Burkhardt v. Bailey*, 260 Mich. App. 636, 654-55 (2004).

The UCC says this about contractual assignments:

> Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on the other party by that other party's contract, or impair materially the other party's chance of obtaining return

> performance. A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his or her entire obligation can be assigned despite agreement otherwise.

MCL 440.2210 (2). Plaintiff meets these requirements as well. The alleged assignment in no way affects either Defendants' rights or obligations under the contract. Neither defendant has argued that it does.

The more specific UCC provisions control where the UCC applies, and the weight of authority is not to require the satisfaction of both statutes of frauds. *See, e.g., Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 140-02 (6th Cir. 1983). In *Roth Steel*, the Sixth Circuit clearly adopted Ohio's version of the UCC statute of frauds over a general statute of frauds in the context of a sales contract between merchants. Defendant has cited no contrary authority nor has the Court located any. Instead, where applicable, the more specific UCC provision controls as courts do not require the satisfaction of both the UCC statute of frauds and the states' general statute of frauds. *See, e.g.*, *Copeland Corp. v. Choice Fabricators, Inc.*, 345 Fed. Appx. 74 (6th Cir. 2009); *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172 (5th Cir. 1988). Thus the Court concludes that the UCC's rules regarding the statute of frauds and the assignment of contractual rights controls, not the more general Michigan statute of frauds, MCL 566.132.

Exhibits A and B to Plaintiff's Complaint clearly comply with the UCC statute of frauds. MCL 440.2201. It was also clearly signed by Defendant MRC's predecessor in interest. Defendant MRC raises a red herring by stating that since the alleged assignment of contractual rights to Plaintiff occurred after the renewal order was set to expire, that is after January 31, 2011, there were no contractual rights to assign. MRC's position in this regard borders on disingenuous. As it states in the renewal order, "all other terms and conditions of Purchase Order Number MS01183Y08

remain in full force and effect." The original purchase order clearly contains many other contractual terms, beyond the termination of the purchase order.

Further, it is beyond dispute that the contract was subject to at least partial performance, albeit defective according to Atlas Resources, taking it altogether out of the statute of frauds. *See e.g., Power Press Sales Co. v. MSI Battle Creek Stamping*, 238 Mich. App. 173 (1999) (recognizing that an oral agreement, otherwise unenforceable due to the lack of a sufficient writing, becomes legally enforceable upon partial performance). In short, the existence of a contract between MRC and **someone** is completely beyond dispute. The question, thus, is narrowed to whether or not Atlas Resources was assigned the contractual rights of DTE and its successor, AGO. The burden of proving a statute of frauds defense is on the defendant. *Fairway Machinery Sales Co. v. Continental Motors Corp.*, 40 Mich. App. 270 (1972). This, Defendants have failed to do, based on the testimony of Joel S. Heiser.

          1.     <u>Sworn Affidavit of Joel S. Heiser</u>

The Federal Rules of Civil Procedure dictate that where the moving party has properly supported its motion with affidavits or other documents the non-moving party may not rest on the mere allegations or denials in the pleadings, but must set forth specific facts showing that there's a genuine issue for trial. Fed. R. Civ. P. 56(e). The Supreme Court, in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), held that in order to defeat a properly supported motion for summary judgment, the non-moving party must show by affidavits or by the depositions, answers to interrogatories and admissions specific facts showing that there's a genuine issue for trial. *Id.* at 324. An affidavit by the non-moving party is sufficient to establish a genuine issue of material fact precluding summary judgment. *See Thomas v. City of Alliance,* No. 94-3219, 1995 WL 236673, at *2 (6th Cir. Apr. 21,

1995) (quoting with approval *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994)); *Copenhaver v. Mich. Dep't of Corr.*, No. 05-73286, 2007 WL 2406925, at *6 (E.D. Mich. Aug. 20, 2007); *see also Jones v. Barnett,* No. 05-73673, 2007 WL 522705 (E.D. Mich. Feb. 14, 2007).

Mr. Heiser's affidavit is made on personal knowledge, sets out facts that would be admissable in evidence and shows that the affiant is competent to testify on the matter stated. Mr. Heiser's affidavit sets forth numerous admissable and detailed facts regarding the various assignments of the contract and the interest and rights related to the well in question. He is competent to testify to the matters contained therein as he is the Associate General Counsel and Secretary for Atlas Resources and the Associate General Counsel and Assistant Secretary of Atlas Energy, LP (AHD). He has sworn that he has extensive knowledge of the contract, the claims at issue, is familiar with the assignments, and was intimately involved in the disputed matters in the case. Heiser's affidavit demonstrates the existence of a genuine factual dispute concerning the nature of Plaintiff's rights and the dates on which such came into existence. His affidavit clearly defeats Defendants' motion for summary judgment. Thus, the undersigned concludes that neither Defendant is entitled to the relief requested based on the statute of frauds.

C. <u>Standing</u>

Defendant Benmit argues that Plaintiff lacks standing because it cannot establish actual ownership in well or mineral rights at the time the lawsuit was filed.[2] Defendants argue that no formal writing supported the transfer of the interest in the well until December 19, 2012, long after Plaintiff brought this litigation. Thus, Defendants contend that Plaintiff lacked standing to bring the

---

[2] It appears that Defendant MRC concurs.

present action because as of the date this action was initiated Plaintiff did not possess actual ownership in any of the well or mineral rights at issue.

To satisfy Article III standing requirements, a Plaintiff must show: 1) it has suffered an injury in fact that is concrete and particularized and actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Regardless of the recorded instruments assigning the lease, Atlas Resources had in fact a "legally protected interest" in the Lucas Well permit from its inception. Lucas Well was drilled and funded through a drilling partnership. Atlas Resources was and is the managing general partner (MGP) and operator of the drilling partnership, and owns an interest in the same. *See* Transaction Agreement (Dkt. 191, Exh. 4, Page ID #2166); *see also* Amended and Restated Certificate and Agreement of Limited Partnership for Atlas Resources Series 28-2010 L.P. Drilling Partnership (Dkt. 193, Exh. 10, Page ID #2358). Atlas Resources has individualized interest in the form of capital contributions in the partnership and has an interest in the capital and profits of the partnership. *Id.* at ¶ 3.04(a), ¶ 3.04(c), Page ID #2373. *See also* Form 10k for Atlas Resources Series 28-2010 L.P. (Dkt. 194, Exh 11, Page ID #2414). The drilling partnership is engaged in the exploration, development and production of natural gas and oil. Atlas Resources, as the MGP, may exercise full control over all operations of the partnership. (Dkt. 193, Exh. 10 at ¶ 4.02(c)(1)(i), Page ID #2377). Furthermore Plaintiff is expressly authorized to engage in the control of any matters affecting the rights and obligations of the drilling partnership, including the conduct of litigation and settlement of claims and litigation. *Id.* at ¶ 4.02(c)(1)(x)(b), (c), Page ID #2378. Atlas

Resources also had and has the power to subcontract and delegate all or any part of its duties to any entity chosen by it, including any affiliated entities. *Id.* at ¶ 4.02(c)(3), Page ID #2379.

According to Plaintiff, Atlas Resources, as the MGP of the drilling partnership, selected the Lucas Well as a prospect to be drilled and included in the drilling partnership. (Dkt. 190, Exh 3, Page ID #2159). Atlas Resources then tasked its Michigan affiliate, AGO, with the drilling, coordination, oversight and completion of the Lucas Well. *Id.* At that time both Atlas Resources and AGO were wholly owned subsidiaries of Atlas Energy, Inc. Plaintiff alleges that the Lucas Well was drilled just prior to the transfer of assets from AGO to AHD (and from AHD to Atlas Resources), and prior to Atlas Energy, Inc.'s merger into Chevron Corporation. *Id.* Atlas Resources was assigned the contract and thus is a proper party to enforce its terms. In the Court's opinion, Plaintiff clearly has the Article III standing to enforce the rights it alleges were violated in the Complaint.

### D. Double Liability

Further, insofar as the Defendants are purportedly concerned about double liability, Plaintiff in its supplemental briefing (Dkt. 217) has included correspondence from Jay Hammond, Supervising Counsel of Chevron, dated June 4, 2013, and AHD's ratification agreement. Chevron and AHD both disavow any interest in any claims arising under any order between MRC and those entities. Atlas Energy, LP likewise has ratified that Atlas Resources is the successor-in-interest of Atlas Energy, LP's interest in the contract that is the subject of the litigation. Thus, it appears that Defendants' fear of "double liability" has also become a red herring.

III.     Conclusion

For the reasons stated above, the undersigned recommends that Defendant McJunkin Red Man Corporation's Motion for Summary Judgment for Lack of Privity and Standing (Dkt. 187), joined by Defendant U.S. Tubular Products, Inc. (Dkt. 197), both be **denied**.

Respectfully submitted,

Date:  July 26, 2013                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge


OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).