UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATLAS RESOURCES, LLC,

                Plaintiff,                          Case No. 1:12-cv-41

v                                        HON. JANET T. NEFF

McJUNKIN REDMAN CORP. and
U.S. TUBULAR PRODUCTS, INC.,

                Defendants.
_____/

## OPINION

Plaintiff Atlas Resources, Inc. (Atlas Resources) initiated this action in state court in December 2011 to recover property damages related to the Lucas Well in Kalkaska County, Michigan as the result of an alleged defect in casings that it purchased from Defendant U.S. Tubular Products, Inc., specifically its Ohio division d/b/a Benmit (Benmit), through its distributor, Defendant McJunkin RedMan Corporation (MRC or McJunkin).  MRC removed the case to this Court on January 13, 2012 on diversity grounds.  Now pending before the Court are Benmit's Motion for Partial Summary Judgment (Dkt 151) and MRC's Motion for Partial Summary Judgment (Dkt 164), motions that concern Atlas Resources' requested damages.  Having conducted a Pre-Motion Conference in this matter and having now fully considered the parties' written briefs, joint statement of undisputed facts and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons that follow, the Court concludes that Benmit's motion (Dkt 151) and MRC's motion (Dkt 164) are properly granted.

# I. BACKGROUND

Atlas Resources is a limited liability company that drills natural gas wells.  MRC distributes pipe, valve and fitting products to energy and industrial markets (MRC Mot., Dkt 164-1 at 6). Benmit manufactures, sells, distributes and supplies well casing (Compl. ¶ 4, Dkt 1-2 at Page ID#14).

On May 19, 2004, Atlas Resources' predecessor, DTE Gas & Oil Company, entered into a Purchase Contract with MRC's predecessor, McJunkin Appalachian, for the purchase of well casing (Joint Statement of Undisputed Facts Regarding Motions for Summary Judgment of U.S. Tubular Products, Inc. and McJunkin Red Man Corporation [JSUF], Dkt 165, ¶ 1).  Among other provisions, the Purchase Contract provides the following:

14.     REMEDIES

The Parties' rights and remedies pertaining to this Agreement and transactions under this Agreement are provided herein, in lieu of any and all other rights and remedies available in law; provided that nothing herein shall limit the Parties' rights to seek and obtain equitable relief such as injunctive relief.  A waiver by either party of any right under this Purchase Order shall not affect any rights subsequently arising under the same or similar clauses hereof . . .

15.     PRODUCT ASSURANCE

(a)     Inspection and Testing

. . .

3.      . . . Material manufactured by others but furnished by Seller that is defective in material or workmanship, or is otherwise not in compliance with the manufacturer's warranty, will be repaired or replaced, or the purchase price shall be refunded, at Seller's or manufacturer's option to the extent the manufacturer's warranty remains in effect and is honored by the manufacturer. . . .

4.       THE ABOVE WARRANTY AND REMEDY ARE GIVEN AND ACCEPTED IN LIEU OF AND SUPERCEDE (i) ALL OTHER REMEDIES, REPRESENTATIONS, AND WARRANTIES, VERBAL OR WRITTEN, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, AND (ii) AS BETWEEN PURCHASER AND SELLER ONLY, ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY IN CONTRACT OR IN TORT, INCLUDING PRODUCT LIABILITY BASED UPON STRICT LIABILITY, NEGLIGENCE, OR IMPLIED WARRANTY AT LAW.

5.       Seller excludes liability, and Purchaser accordingly waives and agrees not to assert each and every claim whatsoever against Seller, whether by indemnity or otherwise, and whether as a result of breach of contract or warranty, tort (including without limitation, negligence and strict product liability), for any other loss, damage or expense, including incidental and consequential damages to persons, property, or business, and loss of anticipatory profits, directly or indirectly arising from the conditions or use of a Product or from any other cause, the exclusive remedy against Seller being replacing or repairing a defective Product including, at Seller's expense, the reasonable cost of removing from service defective Product under warranty and placing back into service the repaired or replacement Product.

Dkt 1-2 at Page ID#30, Purchase Contract, Ex. A to Compl.  Atlas Resources admits that Paragraph 15(a)(5) of the Purchase Contract contains certain waivers and provides for remedies for a defective product, including the reasonable cost of removing from service defective products under warranty and placing back into service the repaired or replacement product (JSUF ¶ 3).

The original term of the Purchase Contract between Atlas Resources' predecessor and MRC's predecessor ran from February 1, 2005 to January 31, 2006 (JSUF ¶ 4).  Atlas Resources and MRC renewed the Purchase Contract for successive one-year terms, including a renewal in

December 2009 (Renewal Order #5) for a period running February 1, 2010 to January 31, 2011, which is the renewal period covering the well casing at issue in this case (*id.* ¶ 5).

MRC ordered the casing it would supply to Atlas Resources via a purchase order with Benmit (JSUF ¶ 6).  Paragraph 1 of the Benmit Purchase Order states, in pertinent part, "[t]his document together with Purchaser's Purchase Orders and any exhibits, attachments and other documents incorporated by referenced (collectively, the "Order") is an offer by Purchaser to purchase the goods or services indicated on the Purchase Order upon the terms and conditions contained herein" (Dkt 1-2 at Page ID#33, Benmit Purchase Order, Ex. B to Compl.).  Paragraph 10 of the Benmit Purchase Order states in pertinent part as follows:

> 10.     **Warranty.**  Supplier warrants that all goods supplied under the Order will be:  (i) in strict accordance with the specifications, samples, drawings or other descriptions provided by or through Purchaser, and all applicable performance and material standards, including without limitation, and by way of example only, those defined by the American National Standards Institute (ANSI) and the American Society for Testing and Materials (ASTM); (ii) new (unless otherwise expressly stated on the Order)[;] (iii) merchantable and free from defects; (iv) to the extent that Purchaser or its customer relies on Supplier to specify or select the goods, fit for the purpose for which they are furnished; and (v) produced in compliance with all laws, rules, regulations, and standards.… Supplier further warrants that all services will be performed in accordance with the standards of care and diligence normally practiced by persons performing similar services and in the best workmanlike manner.…  All product warranties provided herein shall apply to goods calibrated, filled, modified, or assembled in accordance with Supplier's instructions and procedures, or industry standards.  Supplier agrees and acknowledges that these warranties will be assigned and passed on to Purchaser's customers.… The representations and warranties set forth herein shall survive any inspection, delivery, or acceptance of, or payment for, the goods or services, as well as completion of the Order or termination of any portion of the Order.

*Id.* at Page ID#33-34.

4

Pursuant to Renewal Order #5, Atlas Resources ordered and obtained from MRC a total of 42,349.1 feet of 5.5" diameter casing, priced at $19.80 per foot (JSUF ¶ 9).  On or about December 10, 2010, Atlas Resources installed 11,107.78 feet of the casing supplied by MRC at the Lucas Well, an exploratory natural gas well located in Kalkaska County, Michigan (*id.* ¶ 10).  The cost of the 11,107.78 feet of the casing that was installed at the Lucas Well was $219,934.04 (*id.* ¶ 11).  Chevron, Atlas Resources' successor in interest to the title of the unused casing, received a credit for the casing that was delivered but not run in the Lucas Well (*id.* ¶ 29).

After installation, Atlas Resources discovered leaks within the 5.5" casing and communication between the 5.5" casing and the 11.75" casing (JSUF ¶ 12).  Pressure testing conducted on the 5.5" casing indicated leaks where the casing was coupled together (*id.*).  On January 6, 2011, Atlas Resources set a retrieval bridge plug in the well; since then, besides monitoring pressures and maintaining the well site, Atlas Resources has performed no other work on the well (*id.* ¶ 13).  The Lucas Well remains in temporary abandonment status with the state regulatory agency (*id.* ¶ 14).

Atlas Resources has not removed the casing that was installed in the Lucas Well (JSUF ¶ 15).  Atlas has not replaced the casing that was run in the Lucas Well (*id.* ¶ 16).  Atlas Resources has not incurred any costs to date for removing the casing that was installed in the Lucas Well (*id.* ¶ 17).  Atlas Resources has not incurred any costs to date for replacing the casing that was installed in the Lucas Well (*id.* ¶ 18).  Atlas Resources has developed no formal, written plans to actually remediate, rework or sidetrack the Lucas Well (*id.* ¶ 19).  Other than the report drafted by its expert witnesses in this litigation, Steven Kohler and Andrew Smits, Atlas Resources has not itself performed, or had anyone on its behalf perform, any analysis of the potential to rework, remediate and/or sidetrack the

Lucas Well (*id.* ¶ 20).  Atlas Resources has not performed any analysis regarding the economic feasibility of reworking, remediating, and/or sidetracking the Lucas Well (*id.* ¶ 21).  Atlas Resources has not prepared any proposals to rework, remediate, and/or sidetrack the Lucas Well (*id.* ¶ 22).  Atlas Resources has not communicated or corresponded with contractors regarding reworking, remediating and/or sidetracking the Lucas Well (*id.* ¶ 23).

Atlas Resources' drilling operations in Michigan have ceased since the acquisition of Atlas Resources by Chevron that was announced in the fall of 2010 and finalized in the spring of 2011 (JSUF ¶ 24).  Atlas Resources has no operational drilling presence in Michigan (*id.* ¶ 25).  Atlas Resources has no employees in Michigan (*id.* ¶ 26).  Atlas Resources has not completed any of the exploratory wells it permitted—including the Lucas 1-13 HD Well—in the Collingwood Shale zone (*id.* ¶ 27).  Atlas Resources has not completed any producing wells in the Collingwood zone (*id.* ¶ 28).

In December 2011, Atlas Resources filed this five-count Complaint in state court.[1]  In Count I (a Breach of Contract claim against MRC), Atlas Resources alleges that MRC's conduct, "both in supplying the defective casing and in failing to reimburse Atlas with all costs of replacement and removal of the defective casing," constitutes a breach of the Purchase Contract, entitling Atlas Resources to its "ongoing economic damages" (Compl, Dkt 1-2 at Page ID#19).  In Count II (a Breach of Contract claim against both Defendants), Atlas Resources alleges that it is a third-party beneficiary of the Benmit Purchase Order and that "[a]s a direct and proximate result of Benmit's breach of the Purchase Order, Atlas has suffered, and will continue to suffer significant damages

---

[1]Atlas Resources pleaded its complaint under Michigan law, and Defendants do not dispute this choice of law.

including costs expended in purchasing the casing, the costs of drilling and testing the Lucas Well, the consequential losses due to the failure of the Lucas Well because of the defective casing, lost profits and the loss of revenue from production had the Lucas Well been completed" (*id.* at Page ID##19-20). In Counts III through V (the warranty claims against Benmit), Atlas Resources seeks "all actual, incidental and consequential damages" (*id.* at Page ID##21, 23 & 25).

MRC removed the case to this Court on January 13, 2012, on diversity grounds. The Court conducted a Pre-Motion Conference with counsel in November 2012 and issued an Order setting forth a briefing schedule on Defendants' proposed dispositive motions (Dkt 129). In January 2013, Benmit filed its Motion for Partial Summary Judgment (Dkt 151), to which Atlas Resources filed a response (Dkt 157), and Benmit filed a reply (Dkt 163). That same month, MRC filed its Motion for Partial Summary Judgment (Dkt 164), in which Benmit joined (Dkt 173). Atlas Resources filed a response in opposition to MRC's motion, requesting partial summary judgment instead be entered in its favor (Dkt 167). MRC filed a reply to Atlas Resources' response (Dkt 166).

## II.  ANALYSIS

### A.  Standard of Review

A party may move for partial summary judgment, identifying the part of each claim on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue

7

to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B. Discussion

As delineated above, Plaintiff seeks to recover actual, incidental and consequential damages in this case (Compl., Dkt 1-2). Under Michigan law, incidental damages include "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." MICH. COMP. LAWS § 440.2715(1). Consequential damages include "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty." MICH. COMP. LAWS § 440.2715(2). Defendants' motions at bar pose two questions about Plaintiff's requested damages for this Court to resolve at this juncture: (1) whether under the plain language of the Purchase Contract, Atlas Resources expressly waived any claim to incidental and consequential damages and agreed to limit its damages from both Defendants to repair, replacement or refund; and (2) whether the undisputed facts stated by the parties support Defendants' claim that the alternative remedy of refund fulfills their contractual obligations under the Purchase Contract.

1.      *Assumption of Risk & Waiver of Damages as to Defendants*

Citing Paragraph 15(a)(5) of the Purchase Contract, MRC argues that the Purchase Contract expressly and unambiguously limits the breach of contract damages available to Atlas Resources to (1) a refund of the purchase price of the casing, or (2) the repair and replacement of the casing, including the cost of removing the defective casing from service (MRC Mot., Dkt 164-1 at 11-12). Benmit similarly argues that Atlas Resources specifically waived any and all claims to damages other than the repair, replacement or refund limitations, and that this Court should therefore hold that Atlas Resources is precluded from pursuing in this action any incidental or consequential damages that it has already contractually waived (Benmit Mot., Dkt 151 at ¶ 8; Benmit Br., Dkt 151-1 at 10-11).  Benmit argues that it is a third-party beneficiary of the Purchase Contract and, in turn, an intended beneficiary of Atlas Resources' assumption of risk and its waiver of damages expressly made to MRC (Benmit Mot., Dkt 151 at ¶ 9).

Atlas Resources does not dispute, and indeed acknowledges, that under the language of the Purchase Contract, its permitted remedies against MRC are (1) a refund of the purchase price of the casing, or (2) the repair and replacement of the casing, including the cost of removing the defective casing from service (Dkt 168 at 16, 24).  However, Atlas Resources argues that the language purportedly limiting its claims addresses only Atlas Resources' claims against MRC, the "Seller," not its claims against Benmit (Dkt 157 at ¶ 5).  Atlas Resources rejects Benmit's third-party beneficiary argument, opining that even a cursory review of the Purchase Contract reveals that Atlas Resources did not make any express promise to or for Benmit, and did not relinquish any rights or remedies against Benmit (*id.* at ¶ 9).

In reply, Benmit argues, in pertinent part, that the language of Paragraph 15 speaks directly to Benmit as the third-party "manufacturer" of the casing that Atlas Resources purchased from MRC (Dkt 163 at 8).

Defendants' arguments have merit.

Michigan's third-party beneficiary statute provides that "[a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." MICH. COMP. LAWS § 600.1405.  The statute further provides that "[a] promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person." MICH. COMP. LAWS § 600.1405(1).  In assessing whether a promisor refrained or undertook to do "something directly to or for" a promisee, Michigan courts use an "objective standard," examining only the "form and meaning of the contract itself." *Osprey-Troy Officentre, LLC v. World Alliance Fin. Corp.*, 502 F. App'x 455, 457 (6th Cir. 2012) (quoting *Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003)).

Here, the form and the meaning of the Purchase Contract objectively indicate that Atlas Resources undertook to give or to do or refrain from doing something directly to or for Benmit, the "manufacturer" in this case.  As a threshold matter, Paragraph 14 of the Purchase Contract indicates that "[t]he Parties' rights and remedies pertaining to this Agreement *and transactions under this Agreement* are provided herein, in lieu of any and all other rights and remedies available in law" (emphasis added).  Paragraph 15(a)(3), in turn, similarly contemplates that "[m]aterial may be manufactured by others but furnished by Seller."  Paragraph 15(a)(3) also contemplates involvement

by the manufacturer in the event that such material is defective or "otherwise not in compliance with the manufacturer's warranty."  In that event, the paragraph instructs that the material will be "[1] repaired or replaced, or [2] the purchase price shall be refunded, at Seller's or manufacturer's option to the extent the manufacturer's warranty remains in effect and is honored by the manufacturer."

Moreover, in the paragraph that follows, Paragraph 15(a)(4)(*i*), the Purchase Contract indicates, with no exclusions, that the "above warranty and remedy are given and accepted in lieu of and supercede all other remedies, representations, and warranties . . .," whereas subparagraph (*ii*), in contrast, specifically limits the subsequent protections to transactions "between purchaser and seller only."

In sum, as Atlas Resources acknowledges, the Purchase Contract contains clear waiver and limitation of remedies provisions, and this Court determines that Benmit is a third-party beneficiary of Atlas Resources' promises therein.

**2.    *Remedy of Refund***

The remaining question posed by these motions is, assuming Atlas Resources can prove liability, whether the undisputed facts stated by the parties support Defendants' claim that the alternative remedy of refund fulfills their contractual obligations.  Benmit argues that the undisputed facts demonstrate that repair/replacement damages are not presently recoverable by Atlas Resources where (1) the evidence indicates that Benmit did not anticipate that the cost of the well or the production of the well would be a potential damage in this sale; (2) had Atlas Resources acted in accordance with its duties and obligations as a well operator, it would have been able to prevent the loss of the well; (3) Atlas Resources has not yet incurred any damages for remediation of the well; and (4) Atlas Resources' lost profit damages and assertion that it would be producing this well but

11

for the casing leaks is based upon speculation and conflicts with the testimony of Atlas Resources' witnesses (Benmit Mot., Dkt 151 at ¶ 10).

Atlas Resources responds that (1) whether Benmit anticipated the cost of the well or lost production therefrom is immaterial; (2) Atlas Resources has complied with all state regulatory requirements in the drilling, securing, and maintenance of the well, and the provision of the administrative rules that Benmit cites governs oil and gas operations in Michigan and is inapplicable to Atlas Resources inasmuch as Atlas Resources was unable to complete and produce the well because of the casing failure; (3) Atlas Resources is seeking the costs to "remediate" the well from Benmit and MRC, as provided for in the contracts, along with all other incidental and consequential damages; and (4) there is absolutely no support for this unfounded claim as "the testimony to date is clear that but for the Casing failure, the Well would have been completed and would have been capable of producing hydrocarbons" (Dkt 157 at ¶ 10).

In reply, Benmit argues that the remedy of refund fulfills the remedy provision (Dkt 163 at 11). Benmit argues that from Paragraphs 14 and 15 of the Purchase Contract, it is apparent that the parties allocated the risk of loss of the well and other consequential damages to the well operator—Atlas Resources (*id.*).

MRC similarly argues in its motion that it is entitled to partial summary judgment that Atlas Resources cannot recover damages for repair and replacement costs where (1) Atlas Resources has not, to date, incurred these costs, and (2) any future costs are speculative (MRC Mot., Dkt 164-1 at 13-14). MRC argues that if Atlas Resources were to establish breach of contract liability, trial on the issue of damages is not necessary because the only damages to which Atlas Resources is

12

contractually entitled is a refund of the $219,934.04 purchase price for the 11,107.78 feet of well casing that was installed at the Lucas Well (MRC Mot., Dkt 164-1 at 18-19).

Atlas Resources responds that it is "clear" that its "exclusive" remedy against MRC is repair and replacement and that "[n]othing in the contract places the burden on Atlas to remove or replace the Casing and then seek reimbursement from [MRC]" (Dkt 168 at 17). Moreover, Atlas Resources rejects MRC's speculation argument, asserting that it has demonstrated with reasonable certainty, through its expert witness reports, the costs involved in sidetracking the Lucas Well and its other damages, and, alternatively, and at the very least, the issue raises a question of fact that precludes summary judgment in MRC's favor (*id.* at 22-23).

Atlas Resources also argues that the proposed remedy of refund will "do nothing to effectively cure the defective Casing and is in fact a breach of the limited warranty afforded Atlas in the Contract" (Dkt 168 at 24). According to Atlas Resources, "simply refunding the purchase price of the Casing installed in the Well as [MRC] suggests will not make the Well operable, will not address the defective Casing threads, [and] will not place Atlas in the same position had the Casing threads not been defective" (*id.* at 28). Atlas Resources requests that this Court grant partial summary judgment in its favor with regard to the damages component of Count I, ruling that Atlas Resources "is entitled to seek all incidental, consequential, and all other damages from McJunkin pursuant to the UCC because McJunkin has breached the limited remedies provision in its Contract with Atlas, and thus the remedy afforded Atlas fails of its essential purpose" (*id.* at 31).

MRC asserts in reply that Atlas Resources' argument is "nothing more than another litigation tactic designed to avoid the exclusive remedies that Atlas agreed to in the contract: repair and replacement or reimbursement of the purchase price" (Dkt 166 at 10). MRC emphasizes that it is

a distributor and is not in the business of drilling wells; thus, MRC does not have the permit, the experience or the knowledge necessary to perform work (or select others to perform work) on the Lucas Well (*id.*). Rather, MRC asserts that consistent with the plain language of the Purchase Contract, MRC can instead pay the reasonable cost for the manufacturer to repair or replace the casing, or the cost for a third-party contractor to remove the casing (*id.*). MRC emphasizes that the contract does not require that MRC specifically perform this work, and Atlas Resources can therefore neither oppose summary judgment nor seek summary judgment for itself on this basis (*id.*).

Defendants' arguments have merit.

Michigan's enactment of the Uniform Commercial Code (UCC), applicable here to the sale of goods such as well casing, *see Neibarger v. Univ. Coops., Inc.*, 486 N.W.2d 612, 614-15 (Mich. 1992), provides that a contract may

> provide for remedies in addition to or in substitution for those provided in [the UCC] and may limit or alter the measure of damages recoverable under this article by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.

MICH. COMP. LAWS § 440.2719(1)(a). "Under this section, parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." *Id.* at cmt. n.1. "[R]esort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." MICH. COMP. LAWS § 440.2719(1)(b). "Subsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive." *Id.* at cmt. n.2.

Contrary to Atlas Resources' contention that its "exclusive" remedy against MRC is repair and replacement, Paragraph 15(a)(3) of the parties' Purchase Contract, which governs "[m]aterial manufactured by others but furnished by Seller that is defective in material or workmanship, or is

14

otherwise not in compliance with the manufacturer's warranty," provides for two alternative remedies, "at Seller's or manufacturer's option," to wit:  either (1) the "[m]aterial ... will be repaired or replaced;" or (2) "the purchase price shall be refunded."  *See generally* 1 WHITE, SUMMERS, & HILLMAN, UNIFORM COMMERCIAL CODE § 13:21 (6th ed. 2012) (Protection for Sellers under Section 2-719(2)) (discussing the virtues of providing alternative remedies).  Paragraph 15(a)(5) further provides that "the reasonable cost of removing from service defective Product under warranty and placing back into service the repaired or replacement Product" is allocated to the Seller (MRC).

As to the first option of repair/replace, the Court agrees with Defendants that Atlas Resources can neither oppose summary judgment nor seek summary judgment for itself on the basis that Defendants have not themselves removed the product from service.  The Purchase Contract does not indicate that Atlas Resources' remedy includes removal of the defective product from service but merely recovery of "the reasonable cost of removing from service defective product."  And, as demonstrated by the parties' undisputed facts, Atlas Resources has not requested reimbursement of the reasonable cost for removal, although the purported defects in the casing were discovered in late December 2010.

Turning then to the alternative remedy of refund, Atlas Resources emphatically argues that Defendants cannot resort to this remedy as it "fails of its essential purpose."  Atlas Resources' argument implicates the second subsection of UCC § 2-719, MICH. COMP. LAWS § 440.2719(2), which provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act."  Michigan courts have held that this section of the Uniform Commercial Code allowing recourse to general remedy provisions is triggered only when "unanticipated circumstances cause the seller to be unable to provide the buyer

15

with the remedy to which the parties agreed." *Price Bros. Co. v. Charles J. Rogers Constr. Co.*, 304 N.W.2d 584, 586 (Mich. Ct. App.1981); *see also Severn v. Sperry Corp.*, 538 N.W.2d 50, 54 (Mich. Ct. App. 1995) (citing *Price* for the same proposition). It is the plaintiff's burden to produce evidence showing that a remedy fails of its essential purpose; otherwise, the limited remedies are enforceable and summary judgment is appropriate. *See, e.g., Admiral Constr. & Maintenance, Inc. v. Volvo Trucks N. Am., Inc.*, No. 10-13651, 2011 WL 4694853, at *6 (E.D. Mich. Oct. 6, 2011) (finding that the plaintiff presented "no proof" that unanticipated circumstances caused the limited remedy to fail in its essential purpose and granting the defendants' motion for summary judgment).

Here, Atlas Resources asserts that a refund "will not make the Well operable, will not address the defective Casing threads, [and] will not place Atlas in the same position had the Casing threads not been defective." However, the Purchase Contract explicitly allocated consequential damages to Atlas Resources, and Atlas Resources' failure to obtain other protection from this risk does not mean that the parties' contractual remedy of refund fails of its essential purpose. "When a plaintiff cannot recover consequential damages, this is not the failure of an agreed remedy; it is the intended consequence of an allocation of risk." 2 WHITE, SUMMERS, & HILLMAN, UNIFORM COMMERCIAL CODE § 16:11 (5th ed. 2013) ("Agreed Limitation on Remedies").

Hence, in *Price Bros. Co.*, 304 N.W.2d at 586-87, where the Michigan court of appeals determined that "the purpose of the contract clause was fulfilled [where] the risk of replacing broken pipe with new pipe was reallocated so that the overall cost of the pipe could be maintained at a reasonable level," the appellate panel observed that "even if the contracted-for remedy is, in fact, no remedy at all, it has not necessarily failed of its essential purpose." *See also* 2 DAMAGES UNDER UCC § 12:4 ("[C]ourts consistently hold that, if the seller has failed in his attempt to provide the

16

primary remedy, the remedy limitation provision itself will not fail if the seller then promptly tenders the alternative remedy.").  Here, too, that a product manufactured by a third party may be defective was not an unanticipated circumstance but specifically anticipated and addressed in the Purchase Contract, by which the Seller (MRC) and the manufacturer (Benmit) agreed to alternative remedies of repair/replace or refund the cost of the defective part, and the risk of any consequential damages was allocated to the Purchaser (Atlas Resources).

While Atlas Resources has demonstrated its dissatisfaction with its bargain, it has not identified circumstances that cause the refund-remedy to fail of its essential purpose and has therefore failed to establish a genuine issue of material fact as to whether the remedy fails its essential purpose.  Accordingly, Atlas Resources is not entitled to partial summary judgment on its claim that it is entitled to recourse under the UCC, and, conversely, Defendants are entitled to partial summary judgment on their claim that resort to the alternative remedy of a refund of the purchase price of the installed well casing ($219,934.04) fulfills their contractual obligations.

### III.  CONCLUSION

For the foregoing reasons, Benmit's Motion for Partial Summary Judgment (Dkt 151) and MRC's Motion for Partial Summary Judgment (Dkt 164) are granted.  An Order will be entered consistent with this Opinion.


DATED: September 6 , 2013                 /s/ Janet T. Neff
                                          JANET T. NEFF
                                          United States District Judge

17